JACOB M. DICKINSON, RECEIVER OF CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* MUSE.

Opinion delivered June 24, 1918.

1. PRINCIPAL AND AGENT—CAUSING ARREST OF THIRD PARTY—LIABILITY OF PRINCIPAL.—When agents or servants of a principal, acting within the scope of their authority, actual or apparent, wrongfully procure the arrest and imprisonment of any one, the principal is responsible for damages resulting from such arrest and imprisonment.

2. PRINCIPAL AND AGENT—CAUSING ARREST OF A THIRD PARTY—RAILROAD STATION AGENT.—Where a railroad station agent or ticket agent called a policeman who arrested plaintiff, the railroad company will not be liable for the act in the absence of a showing that the company had conferred authority upon its agent to cause arrests, or the nature of the agent's duties necessarily implied such an authority.

3. CARRIERS—ACT OF CONDUCTOR—PROCURING ARREST OF PASSENGERS.—The liability of a railroad company on account of an unlawful arrest and imprisonment by the procurement of its conductor is limited to what is said and done by its conductor at the time the passenger is being ejected by him or under his authority, or for only those things said and done that are so closely associated with the act that they may be regarded as a part of the act.

4. CARRIERS—UNUSED TICKET—DUTY OF PASSENGER TO SURRENDER.—One who has an unused railroad ticket can not recover the value thereof without offering to surrender it.

Appeal from Logan Circuit Court, Southern District; *Jas. Cochran*, Judge; reversed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

1.  Incompetent testimony was admitted.  The testimony is full of irrelevant and immaterial matters.

2.  The court erred in submitting to the jury the question of plaintiff's arrest and imprisonment.  The city marshal arrested him on his own judgment and without solicitation or instructions from any one connected with defendant.  The ticket seller had no authority as an employee to call an officer.  He acted outside the scope of his authority.  The court erred in its instructions.  Defendant was not liable for plaintiff's arrest and imprisonment and it was error to submit the question to the jury. 65 Ark. 144-9; 105 *Id.* 619-625; 87 *Id.* 524.

3.  It was error to give plaintiff's instruction No. 9. Plaintiff never tendered the ticket.  99 Ark. 486-8.

*Evans & Evans,* for appellee.

1.  The question of plaintiff's arrest and imprisonment was properly submitted to the jury.  97 Ark. 24; 42 *Id.* 552-3; 78 *Id.* 553.  A railway company is liable for the wrongful act of its conductor in procuring the arrest of a passenger.  Cases *supra.*  He was acting within the scope of his authority.

2.  Plaintiff was clearly entitled to recover for the unused ticket.  There was no error in giving instruction No. 9.  Plaintiff bought and paid for the ticket.  It was unused and he ought to recover the price paid for it.

HUMPHREYS, J.  This suit was instituted by appellee against appellant in the circuit court for the Southern District of Logan County, to recover damages on account of an alleged failure to hold passenger train No. 42 at Howe, Oklahoma, a sufficient length of time for appellee to debark, buy a ticket to Little Rock, Arkansas, and return to the train; and an alleged wrongful ejection therefrom at Booneville, Arkansas, coupled with an alleged unlawful arrest and imprisonment.

Appellant denied all the material allegations in the complaint.

The cause was submitted to a jury upon the pleadings, evidence and instructions of the court. The jury returned a verdict against appellant in the sum of $308.57, upon which judgment was rendered. Proper steps were taken and an appeal has been prosecuted to this court.

The substance of the material facts necessary to a determination of the questions involved on this appeal are as follows: Dr. Muse, a physician residing at Conway, Arkansas, who was returning from a visit to his mother in her last illness, purchased transportation and a sleeping car ticket in the afternoon of the 12th day of February, 1917, from Oklahoma City to Howe, Oklahoma. He was en route home and was advised by the conductor of passenger train No. 42 that the train would stop at Howe long enough for him to buy a ticket to Little Rock. He was feeling badly from the loss of sleep, and, during the day and evening took three drinks of alcohol, diluted to some extent with water, and one dose of morphine. He boarded the train at Oklahoma City about 9:40 o'clock, and, after arranging for a call at Howe, retired. He suffered quite a little during the night and did not sleep much. In response to the call for Howe, he dressed, took his grip and coat and got off for the purpose of getting a ticket to Little Rock and returning to the train. The train started just as he got his ticket, and he got on the train at the first opening that reached him, which proved to be the platform between the express car and blind baggage. The door was locked and he could not get into the car. Due to the loss of sleep and perhaps somewhat to the influence of alcohol and morphine, he went to sleep. Booneville, Arkansas, is a little less than 50 miles from Howe. It took about two hours to make the run. The morning was very cold. The train reached Booneville at about 6:40 a. m. and remained there 25 minutes for the crew and passengers to get breakfast. The crew on the train was changed at that point. Appellee was found sleeping on the blind baggage by a porter who took him off. As he was doing so, the conductor of the train from Shawnee to that point informed him that he had been a

passenger on the sleeper.   The porter conducted him along the train until he met A. L. Moore, the conductor in charge from Booneville to Little Rock.   At this point in the history of the case, the evidence became quite conflicting.

Appellee's evidence tended to show that he was somewhat bewildered, due to the loss of sleep, and was numb from the cold; that he informed the conductor that he had a ticket to Little Rock; that the conductor disputed his statement and denounced him as a "bum;" that he felt in his vest pocket for his ticket but could not get it on account of the numbness of his hands; that he walked back to the sleeper and got on; that the conductor removed him from the sleeper roughly, and, in doing so, kicked him on the shin; that he afterwards tried to get on the day coach and was refused admittance by the brakeman, until he purchased a ticket; that his money had disappeared during the night in the sleeping car, but he went to the depot and tried to purchase a ticket with his individual check which was refused. He then returned to the platform and was standing there, having given up the idea of getting on the train, when an officer appeared, and, in response to the direction of the conductor, arrested him.   He remained in jail until after dinner when, through acquaintances, he cashed a check and started at 8 o'clock p. m. for Little Rock.   He purchased another ticket and did not tender the old ticket which he retained and produced in evidence.   Sol Moore, ticket agent, testified that he telephoned at the instance of the road master, to the officer about appellant being there drunk and to come and see about it.   The officer, conductor and other trainmen denied pointing appellee out and directing his arrest.

The evidence is quite voluminous and many questions as to the competency and relevancy thereof were raised and exceptions properly saved.   A number of instructions were asked by appellant.   Some of them were refused and appellant saved its exceptions.   Some of them were modified and given as modified and appellant saved

its exceptions to the refusal of the court to give the instructions in the form asked and for the modification and giving them as modified. We deem it unnecessary to detail the other phases of the evidence or to set out all the instructions in full for the reason that appellant argues only two alleged errors for reversal.

It is insisted by appellant that the court erred in submitting to the jury the question of appellee's arrest and imprisonment. The contention is that there was no evidence tending to show that the servants of appellant were acting within the scope of their authority when the arrest was procured.

(1) It is a well settled rule of law that where agents or servants of a principal, acting within the scope of their authority, actual or apparent, wrongfully procure the arrest and imprisonment of any one, the principal is responsible for damages resulting from such arrest and imprisonment. *Mayfield* v. *St. L., I. M. & S. R. Co.,* 97 Ark. 24.

The undisputed evidence in this case concerning the arrest is that the ticket agent phoned, at the request of the road master, for the officer who made the arrest. This court held in the case of *C., R. I. & P. Ry. Co.* v. *Nelson,* 87 Ark. 524, that (quoting syllabus 2): "A railroad company is not liable for the wrongful arrest by a policeman of a passenger, though the arrest was made under the direction of the company's station master, if the latter had no authority to direct the arrest to be made."

In that case, under company rule 702, amongst other things, one of the station master's duties was "to preserve order about the station."

And in the case of *Mayfield* v. *St. L., I. M. & S. R. Co.,* 97 Ark. 24, this court said: "A railroad station agent has no authority to prosecute a person who has wrongfully taken property of the railroad company placed in the custody of such agent."

(2)   There is no proof in the case at bar that the ticket agent or the road master had any express or implied authority to procure the arrest and imprisonment of passengers or persons seeking passage upon the trains. Unless it was shown that authority to procure arrests was conferred by the company on the ticket agent or road master, or the performance of their duties necessarily implied authority to procure the arrest and imprisonment of a party, their participation in the arrest and imprisonment of appellee would not warrant the submission of his unlawful arrest and imprisonment to the jury. *Little Rock T. & E. Co.* v. *Walker,* 65 Ark. 144; *Mayfield* v. *St. L., I. M. & R. Co., supra.*

No other official of the railroad company participated in the arrest, unless it was the conductor. In speaking with reference to the liability of a railroad company for the act and conduct of its conductor in ejecting passengers, this court has said that (quoting syllabus 3): "A street railway is liable for the wrongful acts of its conductor in ordering a policeman to arrest one of its passengers and remove him from the car in which he was riding; but not for such conductor's subsequent acts in prosecuting the passenger for a breach of the peace, such prosecution not being within the scope of the conductor's authority." *Little Rock Ry. & Electric Co.* v. *Dobbins,* 78 Ark. 553.

And has further said (quoting syllabus 4): "A railroad company is not liable for the wrongful acts of its conductor in swearing out a warrant of arrest against a passenger on the next day after he was ejected from its train." *St. L., I. M. & S. R. Co.* v. *Waters,* 105 Ark. 619.

(3)   It seems that the liability of a railroad company, on account of an unlawful arrest and imprisonment by the procurement of its conductor, is limited to what is said and done by its conductor at the time the passenger is being ejected by him or under his authority, or for only those things said and done that are so closely associated with the act that they may be re-

garded as a part of the act.  It was said in the case of *Little Rock Ry. & Elec. Co.* v. *Dobbins, supra,* that, ''The evidence, so far as it relates to the arrest of the appellee on the car by the policeman at the request and direction of the conductor, was proper, for this was the method adopted by the conductor for the ejection of appellee from the car, and was therefore an act in the scope of the conductor's employment.''  And what was said and done by the ejected parties and the officials ejecting them on the depot platform immediately after the ejectment was held to be competent evidence in the case of *St. L., I. M. & S. R. Co.* v. *Waters, supra.*  In the case at bar, appellee admits that what he thinks the conductor said pertaining to the arrest and imprisonment occurred on the depot platform after he had been ejected and after he had gone to purchase a ticket at the ticket office in Booneville and after he had given up all hope of getting on the car.  What was said by the conductor, if said with reference to the arrest, was too remote in time and not sufficiently connected with the ejectment to hold that the procurement of the arrest and imprisonment was a part of the act of ejection.  It was therefore error for the court to submit the question of arrest and imprisonment to the jury.  There was no competent evidence to support the instruction.

It is also contended by appellant that the court erred in submitting the question of liability of the railroad for the value of the unused ticket from Booneville to Little Rock.  The undisputed evidence is that appellee never presented this ticket at any time to the company for passage on its train.  For this reason, we think he can not recover.  It was said by this court in the case of *St. L., I. M. & S. Ry. Co.* v. *Dare,* 99 Ark. 486: ''Even if he were entitled to recover the value of the ticket, he could not do so because he retained it and did not offer to surrender it.''

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.